IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **GREGORIO ARISTA**, on behalf of himself and all other similarly situated employees, known and unknown, | Civil Action |
| Plaintiff, | |
| v. | |
| **NARY'S GRILL & PIZZA, INC.**, an Illinois corporation, **LEONEL RODRIGUEZ, SR.**, individually, **LEONEL RODRIGUEZ, JR.**, individually, and **BARBARA RODRIGUEZ**, individually, | No. |
| Defendants. | JURY DEMAND |

## COMPLAINT

By and through his attorneys of record and on behalf of himself and all other similarly situated employees, known and unknown, the plaintiff, GREGORIO ARISTA, (the "Plaintiff") complains of the defendants, NARY'S GRILL & PIZZA, INC., an Illinois corporation, LEONEL RODRIGUEZ, SR., individually, LEONEL RODRIGUEZ, JR., individually, and BARBARA RODRIGUEZ, individually, (collectively the "Defendants"). Pleading hypothetically and in the alternative, the Plaintiff allege as follows:

I. **INTRODUCTION**

1. This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, as a result of the Defendants' failure to pay the Plaintiff and other similarly situated employees of the Defendants time and one-half compensation for the overtime (in excess of 40 in any given week) hours they worked; in Count I, the Plaintiff brings a claim pursuant to Section 216(b) of the FLSA.

2. In Count II, the Plaintiff brings a supplemental claims under the Illinois Minimum Wage Law, 829 ILCS 105/1 *et seq.* and, in Count III, the Plaintiff brings a supplemental claim under the Chicago Minimum Wage Ordinance ("CMWO") Chicago Municipal Code (Ill.) § 1-24-010 *et seq.*

3. In Count IV, the Plaintiff brings a supplemental, common law claim for assault against the defendant, LEONEL RODRIGUEZ, SR.; in Count V, the Plaintiff brings a common claim for assault against the defendant, NARY'S GRILL & PIZZA, INC., under the doctrine of *respondeat superior*.

## II. THE PARTIES

4. The Plaintiff is an individual who is domiciled in Illinois and who resides within the Northern District of Illinois.

5. The following defendants are individuals who are domiciled in Illinois and who reside within the Northern District of Illinois: a) LEONEL RODRIGUEZ, SR.; b) LEONEL RODERIGUEZ, JR.; and c) BARABARA RODRIGUEZ.

6. The defendant, NARY'S GRILL & PIZZA, INC. ("NGPI"), is an Illinois corporation whose: a) registered office is located at or near 4230 ½ Archer Avenue, Chicago, IL 60632; and b) principal place of business is located at or near 4230 ½ Archer Avenue, Chicago, IL 60632.

## III. JURISDICTION AND VENUE

7. Federal question jurisdiction is conferred on this Court by Section 16(b) of the FLSA and 28 U.S.C. §1331.

8. Venue is proper as the acts or omissions that gave rise to the claims alleged herein occurred within this judicial district.

2

9. Further, venue is proper pursuant to 28 U.S.C. § 1391, because NGPI has its principal places of business, at or near 4230 ½ Archer Avenue, Chicago, IL 60632.

IV. **COLLECTIVE ACTION UNDER THE FLSA**

10. The Plaintiff brings this case as a Collective action under the FLSA on behalf of himself and all known and unknown similarly situated employees (the "Collective Class"), and in accord with Section 16(b) of the FLSA, the Plaintiff has given written consent to bring such an action (attached as **Exhibit A**).

11. The Collective Class is defined as: **all current and former employees of the Defendants who were/are paid on an hourly basis, who have worked more than 40 hours in at least one week and/or who could be allowed to work more than 40 hours in any given week now or in the future.**

V. **GENERAL ALLEGATIONS**

12. NGPI is a family business and the individual defendants are close family members.

13. At all times relevant to this action, the Defendants have been engaged in the business of a restaurant open to the general public within the Northern District of Illinois.

14. The Plaintiff was employed by the Defendants from about October, 2014, through December 6, 2018, when he was fired.

15. Being employed at the Defendants' restaurant, and working on a daily basis, the Plaintiff had an opportunity to observe the Defendants' business volume.

16. Upon information and belief, NGPI had gross receipts in excess of $500,000.00 in: a) 2014; b) 2015; c) 2016; d) 2017; e) the twelve-month period between and including April 1, 2017 and March 31, 2018; f) the twelve-month period between and

3

including July 1, 2017 and June 30, 2018; and g) the twelve-month period between and including October 1, 2017 and September 30, 2018.

17. Upon information and belief, one or more of the following statements is true: NGPI had gross receipts in excess of $500,000.00 in: a) 2014; b) 2015; c) 2016; d) 2017; e) the twelve-month period between and including April 1, 2017 and March 31, 2018; f) the twelve-month period between and including July 1, 2017 and June 30, 2018; and g) the twelve-month period between and including October 1, 2017 and September 30, 2018.

18. At all times relevant to this action, each of the Defendants had the power to: a) direct the Plaintiff's work and that of the Collective Class members; b) set the Plaintiff's work schedule and those of the Collective Class members; c) access and review the Plaintiff's work time and payroll records and those of the Collective Class members; d) control the NGPI's human resources and payroll functions relative to the Plaintiff and the Collective Class members; and e) hire and fire the Plaintiff and the Collective Class members.

19. At all times relevant to this action, on a day-to-day basis LEONEL RODRIGUEZ, SR.: a) directed the Plaintiff's work and that of the Collective Class members; b) set the Plaintiff's work schedule and those of the Collective Class members; b) maintained the Plaintiff's work time and payroll records and those of the Collective Class members; c) had direct control over the Defendants' human resources and payroll functions relative to the Plaintiff and the Collective Class members.

20. At all times relevant to this action, on a day-to-day basis LEONEL RODRIGUEZ, JR.: a) directed the Plaintiff's work and that of the Collective Class members; b) set the Plaintiff's work schedule and those of the Collective Class members; b)

maintained the Plaintiff's work time and payroll records and those of the Collective Class members; c) had direct control over the Defendants' human resources and payroll functions relative to the Plaintiff and the Collective Class members.

21. At all times relevant to this action, on a day-to-day basis BARBARA RODRIGUEZ: a) maintained the Plaintiff's work time and payroll records and those of the Collective Class members; and b) had direct control over the Defendants' human resources and payroll functions relative to the Plaintiff and the Collective Class members.

22. At all times relevant to this action: a) LEONEL RODRIGUEZ, SR. was/is the president of NGPI; b) LEONEL RODRIGUEZ, JR. was/is the corporate secretary of NGPI; and c) upon information and belief, BARBARA RODRIGUEZ was/is a corporate officer of NGPI.

23. At all times relevant to this action: a) LEONEL RODRIGUEZ, SR. was/is an owner or stakeholder of NGPI; b) LEONEL RODRIGUEZ, JR. was/is an owner or stakeholder of NGPI; and c) upon information and belief, BARBARA RODRIGUEZ was/is an owner or stakeholder of NGPI.

24. At all times relevant to this action, NGPI operated, controlled and/or constituted an "enterprise" within the meaning of Section 3(r) of the FLSA.

25. During the course of his employment by the Defendants, the Plaintiff and the Collective Class members handled/handle goods that moved in interstate commerce including but not limited to perishable produce, canned and bottled beverages, flour and cardboard and/or paper packaging.

26. At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 3(a) and (d) of the FLSA in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the

employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

27. At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 3(c) of the IMWL in that the Defendants acted directly or indirectly in the interest of the "employer" in relation to the employee plaintiffs represented herein, and are therefore jointly and severally liable for the unpaid wages and other relief sought herein.

28. At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

29. At all times relevant to this action, the members of the Collective Class were/are "employees" of the Defendants within the meaning of Section 3(e)(1) of the FLSA.

30. At all times relevant to this action, the Plaintiff was an "employee" of the Defendants within the meaning of Section 3(d) of the IMWL.

31. At all times relevant to this action, the Plaintiff was a "covered employee" within the meaning of Section 1-24-010 of the CMWO.

32. At all times relevant to this action, the Defendants, and each of them, were the Plaintiff's "employer" within the meaning of Section 1-24-010 of the CMWO.

33. During the course of their employment by the Defendants, the Plaintiff and the Collective Class members were/are not exempt from the maximum hour (overtime) provisions of the FLSA, the IMWL and/or the CMWO.

34. Initially, when the Plaintiff was hired, he worked part-time (less than 40 hours in any given week).

35. In or about January, 2015, the Defendants began allowing the Plaintiff to work full-time (40 hours in any given week or more).

36. From about January, 2015 until the termination of his employment, the Defendants allowed the Plaintiff to work an average of 54 hours per week: the Plaintiff typically worked Monday through Saturday, 11:00 a.m. to 7:00 p.m., and often was allowed to work past 7:00 p.m.

37. The Plaintiff was encouraged and allowed to work through his lunch breaks and eat "on the fly" while working.

38. Occasionally, as all employees do, the Plaintiff would take days off and would arrive late or leave early but, for the most part, he kept the schedule described above. Accordingly, the Plaintiff typically worked about 54 hours per week with occasional fluctuations.

39. During the course of the Plaintiff's employment by the Defendants, the Defendants paid the Plaintiff by the hour.

40. Specifically, the Defendants paid the Plaintiff as the rate of $13.00 per hour.

41. However, the Defendants failed and refused to pay the Plaintiff overtime premiums for the hours he worked in excess of 40 each week – in other words, the Defendants paid the Plaintiff at his "straight" or regular rate for the hours he worked, and failed to add an overtime premium for the overtime (in excess of 40 in any given week) hours he worked.

### The Defendants' Scheme to Avoid Paying Overtime Compensation

42. The Defendants did not use a punch clock, biometric time clock, or other method by which the Plaintiff and the Collective Class members could log their own work

time. Instead, the Defendants simply logged their work time themselves, without input or action by the Plaintiff or the Collective Class members.

43. The Defendants paid the Plaintiff in cash instead of by check.

44. The Defendants failed to provide the Plaintiff with pay stubs indicating his hourly rate and the number of hours he worked each week.

45. The Defendants failed to keep an accurate record of the Plaintiff's work time and pay. For example, on at least one occasion when the Plaintiff asked the Defendants for a letter verifying his employment, the Defendants provided the letter but grossly underreported the Plaintiff's pay in the letter.

46. The Defendants engaged in the actions described in the preceding paragraph in order to obfuscate their improper and illegal payroll practices.

47. During the course of his employment, the Plaintiff was unaware of his rights under the FLSA, the IMWL and the CMWO; upon information and belief, the Collective Class members were and are unaware of their rights under the FLSA, the IMWL and the CMWO.

48. The Defendants failed to display a poster, or any other literature, that would have apprised the Plaintiff and the Collective Class members of their rights under the FLSA, the IMWL and the CMWO and, as a result, the statutes of limitation applicable to their claims have been tolled under the doctrine announced in *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187 (3d Cir. 1978) (see also *Chavez v. Don Stoltzner Mason Contr., Inc.*, 2010 U.S. Dist. LEXIS 33289 (Aspen, J.), *Cisneros v. Jinny Beauty Supply Co., Inc.*, 2004 U.S. Dist. LEXIS 2094 (Grady, J.) and *Cortez v. Medina's Landscaping*, 2002 U.S. Dist. LEXIS 18831 (Gottschall, J.).

49. The Defendants used the methods described above as part of their scheme to avoid paying the Plaintiff and the Collective Class members overtime compensation at the rates required by law.

50. Upon information and belief, the Defendants continue the practice of failing to pay overtime premiums to the Collective Class members through the present day.

## COUNT I
### (Violation of the FLSA – all Defendants)

51. The Plaintiff re-alleges the foregoing paragraphs.

52. Among other ways, the Defendants violated the FLSA by:

   a. failing to pay the Plaintiff at a rate not less than one and one-half times his regular, hourly rate, for the overtime hours (in excess of 40 in any given week) he worked;

   b. failing to provide the Plaintiff with pay stubs that accurately listed his hourly wage rate and the number of hours he worked each week;

   c. failing to accurately record the number of hours that the Plaintiff worked each week; and

   d. failing to hang and display a poster in a prominent location accessible to the Plaintiff, which poster would have informed the Plaintiff of his rights under the FLSA.

53. Among other ways, the Defendants also violated, and continue to violate, the FLSA by:

   a. failing to pay the Collective Class members at rates not less than one and one-half times their respective, regular, hourly rates for the overtime hours they worked;

   b. failing to provide the Collective Class members with pay stubs that accurately listed/list their respective hourly wage rates and the number of hours they worked/work each week;

   c. failing to accurately record the number of hours that the Collective Class members worked/work each week; and

      d. failing to hang and display a poster in a prominent location accessible to the Collective Class members, which poster would have informed the Collective Class members of their rights under the FLSA.

54. The Defendants' violation of the FLSA was willful in that the Defendants were aware or should have been aware of their obligations under the FLSA, but nevertheless attempted to circumvent its provisions.

55. As a direct and proximate result of the Defendants' violation of the FLSA, the Plaintiff was damaged in that he suffered pecuniary loss.

56. As a direct and proximate result of the Defendants' violation of the FLSA, the Collective Class members were damaged in that they suffered pecuniary loss.

57. The Defendants failed to take affirmative steps to ascertain their obligations under the FLSA.

WHEREFORE the Plaintiff, on behalf of themselves and the Collective Class, pray for judgment in his favor and against the Defendants, and each of them, and for the following relief:

    A. damages in an amount equal to the unpaid overtime compensation due and owing to the plaintiffs for each hour the plaintiffs worked in excess of 40 in any given week, but for which the Defendants failed to pay the plaintiffs at rates not less than one and one-half times their respective, regular, hourly rates (in no case less than one and one-half times the CMWO's mandatory minimum rate);

    B. statutory liquidated damages as allowed by the FLSA;

    C. pre- and post-judgment interest on all amounts awarded;

    D. attorneys' fees, together with costs of suit and collection; and

    E. such further relief as may be fair and just in the premises.

## COUNT II
### (Violation of the IMWL – All Defndants)

58. The Plaintiff re-alleges the foregoing paragraphs.

59. Any and all Collective Class members who join this action under the "opt-in" procedure set forth in 29 U.S.C. 216(b) will also affirmatively adopt the allegations in this Count II.

60. Among other ways, the Defendants violated the IMWL by:

   a. failing to pay the Plaintiff at a rate not less than one and one-half times his regular, hourly rate for the overtime hours he worked;

   b. failing to provide the Plaintiff with pay stubs that accurately listed his hourly wage rate and the number of hours he worked each week;

   c. failing to accurately record the number of hours that the Plaintiff worked each week; and

   d. failing to hang and display a poster in a prominent location accessible to the Plaintiff, which poster would have informed the Plaintiff of his rights under the IMWL.

61. The Defendants were aware or should have been aware of their obligations under the IMWL, but nevertheless attempted to circumvent its provisions.

62. As a direct and proximate result of the Defendants' violation of the IMWL, the Plaintiff was damaged in that he suffered pecuniary loss.

63. The Defendants failed to take affirmative steps to ascertain their obligations under the IMWL.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

   A. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate not

less than one and one-half times his regular, hourly rates (in no case less than one and one-half times the CMWO's mandatory minimum rate);

B. statutory punitive damages as allowed by the IMWL;

C. pre- and post-judgment interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and

E. such further relief as may be fair and just in the premises.

## COUNT III
### (Violation of the CMWO – All Defendants)

64. The Plaintiff re-alleges the foregoing paragraphs.

65. Any and all Collective Class members who join this action under the "opt-in" procedure set forth in 29 U.S.C. 216(b) will also affirmatively adopt the allegations in this Count III.

66. The Defendants' practice of deducting about one-third of the Plaintiffs' wages each week caused their respective, hourly rated to fall below the applicable, Chicago minimum wage rate in certain weeks.

67. Among other ways, the Defendants violated the CMWO by:

   a. failing to pay the Plaintiff at a rate not less than one and one-half times his regular, hourly rate for the overtime hours he worked;

   b. failing to provide the Plaintiff with pay stubs that accurately listed his hourly wage rate and the number of hours he worked each week;

   c. failing to accurately record the number of hours that the Plaintiff worked each week; and

   d. failing to hang and display a poster in a prominent location accessible to the Plaintiff, which poster would have informed the Plaintiff of his rights under the CMWO.

68. The Defendants were aware or should have been aware of their obligations under the CMWO, but nevertheless attempted to circumvent its provisions.

69. As a direct and proximate result of the Defendants' violation of the CMWO, the Plaintiff was damaged in that he suffered pecuniary loss.

70. The Defendants failed to take affirmative steps to ascertain their obligations under the CMWO.

WHEREFORE the Plaintiff prays for judgment in his favor and against the Defendants, and each of them, and for the following relief:

A. damages in an amount equal to the unpaid overtime compensation due and owing to the Plaintiff for each hour the Plaintiff worked in excess of 40 in any given week, but for which the Defendants failed to pay the Plaintiff at a rate not less than one and one-half times his regular, hourly rate (in no case less than one and one-half times the CMWO's mandatory minimum rate);

B. treble damages as allowed by the CMWO;

C. pre- and post-judgment interest on all amounts awarded;

D. attorneys' fees, together with costs of suit and collection; and such further relief as may be fair and just in the premises.

### COUNT IV
### (Common Law Assault – LEONEL RODRIGUEZ, SR.)

71. The Plaintiff re-alleges the foregoing paragraphs.

72. On or about December 6, 2018, the Plaintiff complained to the defendant, LEONEL RODRIGUEZ, SR., about certain conditions of his employment and those of his wife, Yanira Linares (a co-employee who is not a member of the Collective Class in that she did not work in excess of 40 hours in any given week).

73. In response to the Plaintiff's complaints, the defendant, LEONEL RODRIGUEZ, SR., swung a machete in the Plaintiff's direction violently and without provocation.

13

74. When the defendant, LEONEL RODRIGUEZ, SR., swung the machete in the Plaintiff's direction, the Plaintiff apprehended that the machete would strike the Plaintiff.

75. The defendant, LEONEL RODRIGUEZ, SR., had no legitimate reason or right to swing the machete in the Plaintiff's direction.

76. As a direct and proximate result of LEONEL RODRIGUEZ, SR.'s tortious actions, the Plaintiff was damaged in that he was caused to experience great fear and apprehension for his safety and bodily integrity.

77. As a direct and proximate result of LEONEL RODRIGUEZ, SR.'s tortious actions, the Plaintiff was damaged in that he was caused to suffer severe emotional distress, and will in the future continue to suffer severe emotional distress.

WHEREFORE, the Plaintiff prays for judgment in his favor and against the defendant, LEONEL RODRIGUEZ, SR., and for the following relief:

A. compensatory damages;

B. consequential damages;

C. punitive damages;

D. pre- and post-judgment interest on all amounts awarded; and

E. such further relief as may be fair and just in the premises.

## COUNT V
### (*Respondeat Superior* – NGPI)

78. The Plaintiff re-alleges the foregoing paragraphs.

79. When LEONEL RODRIGUEZ, SR. assaulted the Plaintiff as described above, he was acting as NGPI's president in that, among other things, the assault was perpetrated in

14

response to the Plaintiff's complaints about certain conditions of his employment by the Defendants.

80. Under the doctrine of respondeat superior, NGPI is jointly and severally liable for the tortious actions of LEONEL RODRIGUEZ, SR., as described above.

WHEREFORE, the Plaintiff prays for judgment in his favor and against the defendant, NGPI, and for the following relief:

A. compensatory damages;

B. consequential damages;

C. punitive damages;

D. pre- and post-judgment interest on all amounts awarded; and

E. such further relief as may be fair and just in the premises.

<u>**JURY DEMAND**</u>

The Plaintiff demands a trial by jury of all issues set forth herein that are capable of being tried by a jury.

Respectfully submitted,

/s/Paul Luka
Attorney for Plaintiff

Paul Luka
paul@mendozalaw.net
MENDOZA LAW, P.C.
120 S. State Street, Suite 400
Chicago, IL 60603
(312) 508-6010

Electronic Service of Documents:
service@mendozalaw.net